IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-10302
_____


MUNICH AMERICAN REINSURANCE COMPANY;
NAC REINSURANCE CORPORATION,

                                        Plaintiffs-Appellants,

                            versus

JOHN P. CRAWFORD, Insurance Commissioner
of the State of Oklahoma, as Receiver of
Employers National Insurance Corporation,

                                        Defendant-Appellee.
_____

Appeal from the United States District Court for the
Northern District of Texas
_____
June 2, 1998
Before JOLLY, DUHÉ, and PARKER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge

     The dispute in this appeal is about who will decide the
entitlement to a $1.5 million pile of money--arbitrators pursuant
to the Federal Arbitration Act (the "FAA"), or the Oklahoma state
insurance regulators and courts under the McCarran-Ferguson Act.
Or, perhaps, the more specific question is who gets to decide who
will decide the entitlement question--the federal courts or the
state courts.  There are, however, several questions we must
address before we reach the ultimate disposition of this appeal.
The first question is one of jurisdiction:  whether the district

court had jurisdiction to reconsider its initial order compelling arbitration of the dispute. We next consider whether the district court correctly invoked the Burford abstention doctrine to dismiss the action to compel arbitration. Finally, we consider whether state laws governing insurance company delinquency proceedings reverse pre-empt the FAA under the McCarran-Ferguson Act. Although we hold that Burford abstention was improper, we conclude that jurisdiction was proper, that the FAA was reverse pre-empted by Oklahoma law under the McCarran-Ferguson Act, and that this dispute is one for the State of Oklahoma to resolve. We, accordingly, affirm the district court's dismissal of the petition to compel arbitration.

I

On January 1, 1986, Employers National Insurance Corporation ("ENIC") and its parent corporation, Employers Casualty Company ("ECC"), entered into reinsurance agreements with Munich American Reinsurance Company ("Munich") and NAC Reinsurance Corporation ("NAC"). Munich and NAC entered into reinsurance agreements with ECC and ENIC to cover ENIC's potential losses under a prior insurance contract (the "umbrella policy") issued by ENIC to Jobs Building Services, Inc. ("Jobs"). Under the reinsurance agreements, Munich and NAC agreed to insure ENIC for a percentage of the net loss on claims paid by ENIC under the umbrella policy.

2

"Net loss" was defined as "all payments by [ENIC] in settlement of claims or losses, payment or benefits, or satisfaction of judgments or awards, after deduction of salvage." "Salvage" was in turn defined as "any recovery made by [ENIC] in connection with a claim or loss, less all expenses paid by [ENIC], other than payments to any salaried employee of [ENIC] making such recovery."

In 1991, ENIC paid $2,065,000 under the umbrella policy to settle a wrongful death action against Jobs. Munich and NAC maintain that ENIC submitted the claim and that each reinsurer paid $829,250 on the reinsurance agreements. ENIC later brought an action in Texas against the underlying insurer in the Jobs wrongful death suit. The case was settled for $2.5 million following an unsuccessful appeal.

On February 14, 1994, prior to the time that the settlement was entered, an Oklahoma state court placed ENIC into liquidation.[1] John R. Crawford, the Insurance Commissioner of Oklahoma, was appointed ENIC's receiver for the ensuing delinquency proceedings. The court's liquidation order authorized and directed Crawford to take all actions necessary and appropriate to accomplish ENIC's liquidation in accordance with the Oklahoma Uniform Insurers Liquidation Act. The order vested Crawford with title to all

---

[1]ECC had also been placed in receivership by its state insurance commissioner.

property of ENIC and directed him to take immediate and exclusive possession of such property wherever located or thereafter discovered. It also enjoined any action against ENIC, Crawford, or any of ENIC's assets.

Consistent with the liquidation order, ENIC's attorneys remitted to Crawford $1.5 million from settlement of the wrongful death action, net of attorneys fees. Munich and NAC contacted Crawford, asserting a vested property right in the proceeds. They urged that these proceeds, as salvage under the reinsurance agreements, were not part of the ENIC estate, but being held in trust for them. Crawford insisted that the proceeds were not salvage because, based on ENIC's books and records, ENIC never sought or received reimbursement from Munich, NAC, or ECC for the underlying claims. When Crawford refused to remit the money, Munich and NAC requested that he submit the dispute to arbitration as called for by the reinsurance agreements. Crawford again refused.

Finally, on July 18, 1996, Munich and NAC filed a petition in federal district court to compel arbitration under the FAA, 9 U.S.C. § 4. On September 18, 1996, the district court entered an order finding that ENIC was a party to the reinsurance agreements and compelling the parties to submit the dispute to arbitration. Crawford moved for a new trial, a rehearing, or an amendment to the

4

judgment under Rule 59(e) of the Federal Rules of Civil Procedure. It was on this motion that the district court first learned of the state court injunction. On October 8, 1996, the district court denied Crawford's motion, noting, however, that principles of comity and federalism required the state court to interpret and enforce its injunction with the appropriate contempt order if necessary. As a result, Crawford filed a motion in state court seeking specifically to enjoin the federal arbitration order and to find Munich and NAC in contempt for violating the previous injunction. Munich and NAC responded with a motion in the federal district court for an injunction forcing Crawford to comply with the arbitration order.

On November 14, 1996, the district court denied Munich's and NAC's motion. The court also took the opportunity to clarify its earlier order, stating:

> [W]hether Petitioners violated the state court injunction by filing this action is a matter for the state court to determine. If the state court determines that the filing of this action violated its injunction, this Court will respect that decision by vacating the arbitration order and dismissing the case. Except in exceptional circumstances, it is the policy of this Court to refrain from interfering with an ongoing state court proceeding.

Accordingly, the district court directed Crawford to file a motion to dismiss the instant action if the state court determined that its injunction had been violated. On January 13, 1997, the state court found that Munich and NAC had violated the injunction issued

5

at the outset of ENIC's delinquency proceedings by petitioning the federal district court to compel arbitration.

Pursuant to the district court's November 14 order, Crawford filed a motion to dismiss the action to compel arbitration. Munich and NAC argued that abstention was inappropriate in this case and that Crawford was estopped from asserting this issue by his delay in raising it. Crawford responded that the FAA was reverse pre-empted by the McCarran-Ferguson Act and that abstention was therefore appropriate. In the event dismissal was not appropriate, Crawford also requested a stay of the district court proceedings. On February 27, 1997, the district court granted Crawford's motion to dismiss under the Burford abstention doctrine. Munich and NAC appeal.

II

Munich and NAC first contend that the district court lacked jurisdiction to reconsider its October 8 order denying Crawford's Rule 59(e) motion because Crawford did not timely appeal or otherwise challenge that order. Crawford responds that in cases where Burford abstention is appropriate, it can be ordered at any time, even on appeal. Although we agree with Crawford that Burford abstention may be raised at any time, see Martin Ins. Agency, Inc. v. Prudential Reins. Co., 910 F.2d 249, 255 (5th Cir. 1990), we ultimately conclude, as explained below, that Burford abstention

was inappropriate in this case. Nevertheless, based upon our review of the district court's orders, we are confident that the district court maintained jurisdiction to issue the abstention order.

The district court's October 8 order reflects its intention to retain jurisdiction over the case until the state court resolved the injunction issue. In the October 8 order, the district court denied the Rule 59(e) motion, but altered the finality of its earlier judgment by effectively reserving the right to revisit that judgment pursuant to appropriate state court action. Having now been informed of the state court injunction, the district court concluded that principles of comity and federalism prevented it from interfering with ongoing state court proceedings and that the state court should enforce its own injunction, citing <u>Trainor v. Hernandez</u>, 431 U.S. 434 (1977), and <u>Younger v. Harris</u>, 401 U.S. 37 (1971). This language evinces the district court's intent to make its September 18 order compelling arbitration conditional pending the state court's resolution of the scope and effect of its injunction.

Our conclusion in this respect is confirmed by the November 14 order, which merely clarified the district court's already-stated position. The November 14 order came as a result of a petition *by Munich and NAC*--not a tardy motion by Crawford or a *sua sponte*

7

reconsideration by the district court--to enforce what they apparently believed was a final order compelling arbitration. As the district court explained, however, "[a]fter considering the [petition], the Court is of the opinion that it should be denied and that the Court's position regarding a previous state court injunction should be clarified." The petition prompted the district court to make explicit what it thought was clear in its October 8 order, namely, that if the state court's injunction had been violated, the district court would respect that decision by vacating the arbitration order and dismissing the case. Thus, when the court finally abstained and dismissed this action on February 27, 1997, it was in compliance with and in fulfillment of its previous orders. For these reasons, we conclude that the district court had not relinquished jurisdiction over this matter when it compelled arbitration on September 18.

Because the district court's order of abstention and dismissal is a final order disposing of all issues pending in the federal suit between the present parties, we have jurisdiction to hear this appeal under 28 U.S.C. § 1291. See Clark v. Fitzgibbons, 105 F.3d 1049, 1051 (5th Cir. 1997). We review the district court's decision to abstain for abuse of discretion, taking care to ensure that the decision fits within the specific limits prescribed by the particular abstention doctrine involved. Id.

III

Munich and NAC contend that the district court erred by invoking <u>Burford</u> abstention and dismissing the present action because the FAA does not vest the district court with discretion to deny arbitration, which is a prerequisite to <u>Burford</u> abstention. They further contend that, even if the <u>Burford</u> abstention doctrine were available in this case, arbitration of the dispute between Munich, NAC, and Crawford would not unnecessarily interfere with ENIC's ongoing state court delinquency proceedings, thus, making <u>Burford</u> abstention inappropriate. Crawford, on the other hand, argues that the district court had no power to compel arbitration because, to the extent the FAA impedes Oklahoma's efforts in regulating the business of insurance and the liquidation of insurance companies, it is reverse pre-empted by the McCarran-Ferguson Act.

A

We first consider whether the district court properly invoked the <u>Burford</u> abstention doctrine to dismiss the reinsurers' petition to compel arbitration. <u>Burford</u> abstention is appropriate in two circumstances: (1) cases involving difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case, or (2) where federal adjudication of the case would disrupt state efforts to establish

9

a coherent policy with respect to matters of substantial public importance. See New Orleans Public Serv., Inc. v. Counsel of City of New Orleans, 491 U.S. 350, 361 (1989) ("NOPSI"). Furthermore, it is true, as argued by Munich and NAC, that Burford abstention is permissible only when the district court has discretion to grant or deny relief. See Quackenbush v. Allstate Ins. Co., 116 S.Ct. 1712, 1721-22 (1996).[2]

Here, the relief Munich and NAC sought from the district court was neither equitable nor otherwise committed to its discretion. Munich and NAC petitioned the district court under the FAA for a determination that their dispute with Crawford was subject to an arbitration clause and for an order compelling the parties to submit the matter for arbitration. The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon

---

[2]Prior to Quackenbush, we and other courts had consistently approved Burford abstention in actions against an insurance company involved in ongoing state delinquency proceedings. See, e.g., Barnhardt Marine Ins., Inc. v. New England Int'l Sur. of Am., Inc., 961 F.2d 529 (5th Cir. 1992); Martin Ins. Agency, Inc. v. Prudential Reins. Co., 910 F.2d 249 (5th Cir. 1990); Gonzalez v. Media Elements, Inc., 946 F.2d 157 (1st Cir. 1991); Law Enforcement Ins. Co. v. Corcoran, 807 F.2d 38 (2d Cir. 1986); Lac D' Amiante du Quebec, Ltee v. American Home Assurance Co., 864 F.2d 1033 (3d Cir. 1988); Wolfson v. Mutual Benefit Life Ins. Co., 51 F.3d 141 (8th Cir. 1995); Grimes v. Crown Life Ins. Co., 857 F.2d 699 (10th Cir. 1988). Moreover, these cases upheld Burford abstention in such actions without regard for the type of relief being sought in federal court. See, e.g., Wolfson, 51 F.3d at 147; Lac D' Amiante, 864 F.2d at 1044.

such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3 & 4). Having determined that the reinsurance agreements contained valid and binding arbitration clauses, the district court had no discretion under the FAA to deny Munich and NAC their right to an order compelling arbitration, at least as to an interpretation of the rights and remedies provided under the reinsurance agreements. The district court, therefore, abused its discretion in invoking Burford abstention in this case.[3]

B

The question remains, then, whether dismissal was nonetheless required because, as Crawford contends, the FAA is reverse pre-empted by the McCarran-Ferguson Act.[4] Congress enacted the

---

[3]We do not reach the question whether, if arbitrators were to determine that the nature of the relief Munich and NAC seek in the underlying claim is equitable, the district court may abstain from enforcing the award.

[4]Munich and NAC argue that Quackenbush disposes of this case in Munich's favor. That case, however, never addressed the McCarran-Ferguson Act. Nor does it appear that the lower courts ever considered the applicability of the McCarran-Ferguson Act or that the parties even raised the issue in Quackenbush. See Garamendi v. Allstate Ins. Co., 47 F.3d 350 (9th Cir. 1995).

11

McCarran-Ferguson Act, 15 U.S.C. § 1101, <u>et seq.</u>, for the specific purpose of consigning to the States broad and primary responsibility for regulating the insurance industry. <u>See</u> <u>SEC v. National Sec., Inc.</u>, 393 U.S. 453, 458 (1969); <u>Barnhardt Marine Ins., Inc. v. New England Int'l Sur. of Am., Inc.</u>, 961 F.2d 529, 531 (5th Cir. 1992). In relevant part, the Act provides:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance.

15 U.S.C. § 1012(b). Ordinarily, federal law pre-empts conflicting state law by virtue of the Supremacy Clause. <u>See</u> U.S. Const. art. VI, cl. 2. The McCarran-Ferguson Act reverses that effect in the narrow range of cases involving state regulation of the insurance industry.

By its terms, the Act permits a state law to reverse pre-empt a federal statute only if: (1) the federal statute does not specifically relate to the "business of insurance," (2) the state law was enacted for the "purpose of regulating the business of insurance," and (3) the federal statute operates to "invalidate, impair, or supersede" the state law. There is no question that the FAA does not relate specifically to the business of insurance. Thus, we need only address the last two requirements.

(1)

The category of laws enacted "for the purpose of regulating the business of insurance" is broad and consists of those laws "that possess the 'end, intention, or aim' of adjusting, managing, or controlling the business of insurance." United States Treasury Depot v. Fabe, 508 U.S. 491, 505 (1993) (quoting Black's Law Dictionary 1236, 1286 (6th ed. 1990)). Statutes that focus on protecting the relationship between the insurer and insured are laws regulating the business of insurance. Id. at 501. The three criteria relevant in determining whether a regulated practice properly involves the relationship between the insurer and insured include whether: (1) the practice has the effect of transferring or spreading a policyholder's risk; (2) the practice is an integral part of the policy relationship between the insurer and the insured; and (3) the practice is limited to entities within the insurance industry. Union Labor Life Ins. Co. v. Perino, 458 U.S. 119, 129 (1982). None of these criteria is dispositive. Id.

(a)

In this case, the Oklahoma laws in question are the provisions of the Oklahoma Uniform Insurers Liquidation Act ("OUILA"), which regulate delinquency proceedings in connection with insolvent insurance companies. See 36 Okl. St. Ann. § 1901, et seq. When an Oklahoma insurance company is declared insolvent and placed into

13

state delinquency proceedings by the state insurance commissioner, the district court of Oklahoma County is vested with "exclusive original jurisdiction" over all delinquency proceedings. See §§ 1903 & 1902(A). These proceedings are intended to be "the sole and exclusive method of liquidating, rehabilitating, reorganizing, or conserving" the insurance company. § 1902(B). The insurance commissioner, as receiver of the estate, is directed to take immediate possession of all of the insurance company's assets and is "vested by operation of law with title to all of the property, contracts, and rights of action . . . of the insurer, wherever located." §§ 1914(A) & (B). To assure orderly disposition of these assets and management of the company's affairs, OUILA further provides comprehensive procedures for the resolution and prioritization of claims against the company. See §§ 1903-20.

OUILA also provides Oklahoma courts with broad powers to enforce the provisions governing delinquency proceedings, such as the power to make "all necessary and proper orders to carry out the purposes of [OUILA]." See § 1902(A). Once delinquency proceedings have commenced, the court may issue an injunction to prevent interference with the receiver, waste of the insurer's assets, or the "commencement or prosecution of any actions, or the obtaining of preferences, judgments, attachments or other liens, or the making of any levy against the insurer or against its assets or any

14

part thereof." § 1904(B). The Oklahoma court in this case issued just such an injunction, precluding Munich from commencing or prosecuting the FAA action in federal district court. The existence of this injunction later served as the basis for the district court's decision to dismiss Munich's FAA petition.

(b)

Crawford argues that OUILA serves the purpose of regulating the business of insurance and, therefore, falls within the scope of the McCarran-Ferguson Act. His position draws substantial support from the Second Circuit's decision in Stephens v. American Int'l Ins. Co., 66 F.3d 41 (2d Cir. 1995). On facts that run parallel to those in this case, the Second Circuit held that the Kentucky Liquidation Act reverse pre-empted the FAA by operation of the McCarran-Ferguson Act. See id. at 45. Kentucky had enacted a comprehensive scheme for the liquidation of insolvent insurance companies, including a provision nullifying the effect of arbitration clauses against the receiver. The appellees, reinsurance companies seeking to compel arbitration regarding their rights of setoff under the reinsurance agreements, argued that the anti-arbitration provision was not enacted to protect policyholders and deprived them of their bargained-for right to arbitration. See id. The Second Circuit refused to limit its focus to the anti-arbitration provision, but instead, examined the Kentucky

15

Liquidation Act as a whole.  It concluded that the Act protected policyholders "by assuring that an insolvent insurer will be liquidated in an orderly and predictable manner and the anti-arbitration provision is simply one piece of that mechanism."  Id.

Like Kentucky, Oklahoma "has formulated a complex and comprehensive scheme of insurance regulation which contains the Uniform Insurers Liquidation Act for the liquidation of an insolvent insurer."  Grimes v. Crown Life Ins. Co., 857 F.2d 699, 705 (10th Cir. 1988) (ordering Burford abstention in case against insurance company involved in delinquency proceedings in Oklahoma state court).  It, like most States, enacted these laws under the shield provided by the McCarran-Ferguson Act.  Cf., e.g., Hartford Cas. Ins. Co. v. Borg-Warner Corp., 913 F.2d 419, 426 (7th Cir. 1990) (Illinois law); Law Enforcement Ins. Co. v. Corcoran, 807 F.2d 38, 43 (2d Cir. 1986) (New York law).  Oklahoma courts, whom we must recognize in our federal system as the primary expositors of Oklahoma law and public policy, have expressly declared that "Oklahoma's Uniform Insurers Liquidation Act is designed to protect the public in general, and *policyholders of an insolvent insurer in particular*."  Cockrell v. Grimes, 740 P.2d 746, 749 (Okl. Ct. App. 1987) (emphasis added); accord Motor Club of Am. v. Weatherford, 841 F. Supp. 610, 618 (D.N.J. 1994) ("[OUILA's] breadth reflects the need to fully protect the insolvent insurer's policyholders,

16

who are generally unfamiliar with the financial condition of the insurer and rely on state regulation to ensure that the promise of payment on their insurance policies at some future date will come to fruition.").

Furthermore, at least two of the three Perino factors suggest that this comprehensive regulatory scheme, viewed in its entirety, regulates the business of insurance.  First, it is crucial to the relationship between the insurance company and its policyholders for both parties to know that, in the event of insolvency, the insurance company will be liquidated in an organized fashion.  See Stephens, 66 F.3d at 44-45; Lac D' Amiante du Quebec, Ltee v. American Home Assurance Co., 864 F.2d 1033, 1041 n.9 (3d Cir. 1988); Blackhawk Heating & Plumbing Co. v. Geeslin, 530 F.2d 154, 159-60 (7th Cir. 1976).  Second, OUILA is limited to entities in the insurance industry.  It does not apply to insolvent companies generally, but only to insolvent insurance companies.  See 36 Okl. Stat. Ann. §§ 1901-1903.  In short, "[r]ecognition by this Court of the effectuation of the liquidation of [ENIC] by the State of [Oklahoma] is in accordance with federal policy which directs that the control over the insurance business remain in the hands of the states."  Anshutz v. J. Ray McDermott Co., Inc., 642 F.2d 94, 95 (5th Cir. Unit A Mar. 1981) (staying appeal as result of state

17

court injunction restraining interference with ongoing liquidation of insurance company).

(c)

Munich and NAC contend, however, that <u>Fabe</u> rejected the notion that we may consider OUILA as a whole in determining whether it was enacted for the purpose of regulating the business of insurance. <u>Fabe</u> indeed offers some support for their position. There, the issue was whether, under the McCarran-Ferguson Act, a federal priority statute was reverse pre-empted by a conflicting Ohio priority statute that was part of a "complex and specialized administrative structure" designed for the regulation of insurance company insolvency. <u>See</u> 508 U.S. at 493-94. The Ohio statute provided sequential priority for (1) administrative costs, (2) specified wage claims, (3) policyholders' claims, (4) general creditors' claims, and (5) government claims. <u>See</u> <u>id.</u> at 495. The federal statute gave the federal government first priority. <u>See</u> <u>id.</u> Examining each priority provision of the Ohio statute separately, the Court held that the priorities for administrative costs and policyholder claims displaced the federal priority, but that the federal priority trumped all other claims. <u>See</u> <u>id.</u> at 509. The Court reasoned that the Ohio statute was enacted for the purpose of regulating the business of insurance to the extent it regulated policyholder interests. <u>Id.</u> at 508. But to the extent

18

that the statute was designed to further the interests of other claimants, it did not have such a purpose.  See id.

Certainly, Fabe's holding and analysis suggest that a statute may require parsing to determine the extent of its pre-emptive power under the McCarran-Ferguson Act.  At the same time, however, the Court stopped short of directing that this approach be taken in every case.  See id. at 509 n.8.  Fabe's holding in this respect is simply unclear.  Compare Antonio Garcia v. Island Program Designer, Inc., 4 F.3d 57, 61-62 (1st Cir. 1993) (every provision must be parsed), with Stephens, 66 F.3d at 45 (statutory scheme may be considered in its entirety).

This uncertainty need not concern us today, however, because even if we are required to parse OUILA, the specific provisions of the statute at issue here--vesting exclusive original jurisdiction of delinquency proceedings in the Oklahoma state court and authorizing the court to enjoin any action interfering with the delinquency proceedings--are laws enacted clearly for the purpose of regulating the business of insurance.  These provisions give the state court the power to decide all issues relating to disposition of an insolvent insurance company's assets, including whether any given property is part of the insolvent estate in the first place. Thus, as the Tenth Circuit has recognized, "Oklahoma has not only adopted a comprehensive scheme to oversee the liquidation of

19

insolvent insurers, it has provided a particular court . . . to oversee liquidation proceedings.  The effect of this provision grants the Oklahoma County District Court a special relationship of cooperation, technical oversight and concentrated review with the Oklahoma Commissioner of Insurance in the process of liquidating insurers."  Grimes, 857 F.2d at 705; see also Lac D' Amiante, 864 F.2d at 1045 (identifying same interests in New York insolvency proceedings).  This special relationship contributes markedly to the orderly liquidation or rehabilitation of the insurance company and the adjudication of claims against it.

 Oklahoma's policy of placing ultimate control over all issues relating to the insolvency proceedings in a single court is aimed at protecting the relationship between the insurance company and its policyholders.  Insurance companies are ineligible for the protections afforded by the federal Bankruptcy Code, see 11 U.S.C. § 109; such protections instead are provided by state laws, which are shielded from federal interference by the McCarran-Ferguson Act.  Clark, 105 F.2d at 1051; see also Wolfson v. Mutual Benefit Life Ins. Co., 51 F.3d 141, 147 (8th Cir. 1995).  The experience of the federal bankruptcy courts, which evidences the importance of consolidating all of the assets of an insolvent company and the claims against those assets in a single forum, supports the legitimacy of the Oklahoma scheme in protecting the interests of

policyholders.  See Levy v. Lewis, 635 F.2d 960, 964 (2d Cir. 1980).  In addition to the interests served by orderly adjudication of claims, which we have already discussed, consolidation prevents the unnecessary and wasteful dissipation of the insolvent company's funds that would occur if the receiver had to defend unconnected suits in different forums across the country.  Gonzalez v. Media Elements, Inc., 946 F.2d 157, 157 (1st Cir. 1991) (per curiam); Lac D' Amiante, 864 F.2d at 1045.  Consolidation also eliminates the risk of conflicting rulings, piecemeal litigation of claims, and unequal treatment of claimants, all of which are of particular interest to insurance companies and policyholders, who are often relying on policies with the same or similar provisions.  See Gonzalez, 946 F.2d at 157; Lac D' Amiante, 864 F.2d at 1047 n.16; cf. also Martin, 910 F.2d at 253-54 (approving Burford abstention to avoid risk of inconsistent adjudications).  Thus, consolidation, enforced through injunctions, conserves the insurance company's assets for ultimate payment to policyholders as well as other creditors.  See Anshutz, 642 F.2d at 95 (approving of injunctions by state receivership courts to consolidate claims against insolvent insurance companies); U.S. Fin. Corp. v. Warfield, 839 F. Supp. 684, 689 (D. Ariz. 1993).

Munich and NAC counter that the OUILA provisions requiring consolidation benefit all creditors in addition to policyholders

and, therefore, should not be considered under <u>Fabe</u> as enacted for the purpose of regulating the business of insurance.  We disagree. The Court in <u>Fabe</u> found that the Ohio provision granting a preference to expenses in administering delinquency proceedings was enacted for the purpose of regulating the business of insurance because it was "reasonably necessary" to further the goal of protecting policyholders.  <u>See</u> 508 U.S. at 509.  The Court reasoned that "[w]ithout payment of administrative costs, liquidation could not even commence."  <u>Id.</u>  Surely, the ability of a state and receiver to administer delinquency proceedings inures to the benefit of all creditors, not just policyholders.  But this fact alone did not alter the insurance-related character of the Ohio provision in <u>Fabe</u>.  As the Court explained in <u>SEC v. National Sec., Inc.</u>, 393 U.S. 453 (1969), "[s]tatutes aimed at protecting this relationship [between an insurance company and its policyholders], directly *or indirectly* are laws regulating the 'business of insurance.'"  <u>Id.</u> at 460 (emphasis added), <u>quoted in</u> <u>Fabe</u>, 508 U.S. at 501.

The same logic applies to the provisions of OUILA requiring consolidation of all claims related to the delinquency proceedings in Oklahoma state court.  For the many reasons we have just identified, these laws are reasonably necessary to further the goal of protecting policyholders, even though they may also benefit

22

other creditors. Some of these benefits fall more directly on policyholders than others, but none are insignificant or attenuated. In these respects, the provisions of OUILA at issue here are indistinguishable from the Ohio provision giving a preference to administrative expenses in Fabe. Thus, we hold that these provisions were enacted for the purpose of regulating the business of insurance.

(2)

We must next consider whether the FAA operates to "invalidate, supersede, or impair" OUILA--specifically those provisions vesting exclusive original jurisdiction of delinquency proceedings in Oklahoma state court and authorizing the court to enjoin any action interfering with the insolvency proceedings. Munich and NAC contend that arbitration of their dispute with Crawford would not in any way interfere with the delinquency proceedings in Oklahoma state court. They maintain that if they have a vested property right to the settlement funds as salvage under the reinsurance agreements, the funds were never an asset of the insolvent estate, and ENIC's creditors never had a right to any portion of the funds. Thus, they argue, this dispute is not within the scope of the delinquency proceedings committed to the exclusive jurisdiction of the Oklahoma state court, and arbitration of the dispute presents no conflicts with Oklahoma law. Alternatively, they assert that if

23

they have only a nonvested interest in damages for breach of contract, they would merely acquire a judgment lien and be forced to stand in line with the rest of ENIC's creditors. This result, they contend, is contemplated by OUILA itself.

Munich and NAC maintain, and we agree, that whether they have a vested property interest or nonvested contractual interest in the settlement proceeds is a question committed to arbitration under the reinsurance agreements.[5] We shall not, in resolving this appeal, make our own interpretation of the agreements and thereby deny the parties their right to have this issue ultimately decided in arbitration. Cf. Folse v. Richard Wolf Med. Instruments Corp., 56 F.3d 603 (5th Cir. 1995) (refusing to address dispute committed to arbitration until final award entered, despite acknowledged failings of arbitration process). Nor need we, because neither

---

[5]Munich and NAC argue that the existence of the Oklahoma Arbitration Act, which upholds the enforceability of arbitration clauses in contracts between insurance companies, see 15 Okl. Stat. Ann. § 802, suggests that arbitration under the FAA presents no conflict with Oklahoma law. We disagree. The Oklahoma Arbitration Act makes no reference to arbitration of disputes with an insurance company in delinquency proceedings. Moreover, we do not hold in this opinion that Munich and NAC have no right to arbitration; we only hold that the district court had no authority to compel it under the FAA. The Oklahoma state court might well decide to order arbitration of this dispute.

alternative leads us to the conclusion that the district court had

the power to compel arbitration under the FAA.[6]

Regardless of the nature of the reinsurers' action, ordering

it resolved in a forum other than the receivership court

nevertheless conflicts with the Oklahoma law giving the state court

---

[6]We note at the outset that Munich and NAC invite us to adopt the approach taken by the Ninth Circuit in Bennett v. Liberty Nat'l Fire Ins. Co., 968 F.2d 969, 972 (9th Cir. 1992). There, in a case very similar to the instant case, the Ninth Circuit rejected a receiver's argument that state insurance insolvency laws were impaired by having the dispute arbitrated under the FAA. See id. at 972-73. The court reasoned that "[o]nly if a court or arbitrator determines that the funds belong to [the insolvent company] does that money become part of the estate that the liquidator will distribute" and does the receiver's authority vest. See id. at 972. We decline the invitation to follow Bennett, however, because it contravenes the well established rule, applicable to both federal and state courts, that if two competing actions are *in rem* or *quasi in rem*, the court first assuming jurisdiction over the property in question exercises that jurisdiction to the exclusion of the other. See Penn Gen. Cas. Co. v. Commonwealth of Pennsylvania ex rel. Schnader, 294 U.S. 189, 195 (1935).

To the extent Munich and NAC, like the petitioner in Bennett, claim a vested property interest in identifiable proceeds and seek an adjudication of ownership in those proceeds, the nature of their action is *quasi in rem*. See Shaffer v. Heitner, 433 U.S. 186, 199 n.17 (1977); Carney v. Sanders, 381 F.2d 300, 302-03 (5th Cir. 1967). Likewise, the delinquency proceedings in Oklahoma state court are *in rem* or *quasi in rem* proceedings. See H.H. Sumrall v. Moody, 620 F.2d 548, 550 (5th Cir. 1980), cert. denied, 450 U.S. 1026 (1981); Geeslin, 530 F.2d at 158. Because the Oklahoma state court first obtained jurisdiction over the proceeds in question, it alone has the power to determine ownership of those funds. See United States v. Bank of New York & Trust Co., 296 U.S. 463, 477-79 (1936) (federal court has no jurisdiction to decide in rem action for property involved in ongoing state court insurance company liquidation proceedings).

25

the power to enjoin any action interfering with the delinquency proceedings. Under section 1904(B) of OUILA, a provision with breadth similar to sections 105 and 362 of the federal bankruptcy code, see 11 U.S.C. §§ 105 & 362, the state court is authorized to issue any injunction "deemed necessary to prevent interference with the Insurance Commissioner or the proceedings, or . . . the commencement or prosecution of any actions, or the obtaining of preferences, judgments, attachments or other liens, or the making of any levy against the insurer or against its assets or any part thereof." The Oklahoma court in this case ordered just such an injunction, precluding Munich and NAC from commencing or prosecuting an action against the receiver, ENIC, or the assets of the insolvent estate. Munich and NAC, however, invoked the FAA to obtain what the state court injunction expressly prohibited--an action against ENIC's receiver to be adjudicated in a forum outside the Oklahoma state court. Although the precise degree to which a state statute may be impaired so as to trigger the McCarran-Ferguson Act is not well-settled, see Doe v. Norwest Bank of Minnesota, 107 F.3d 1297, 1307-08 (8th Cir. 1997), we find impairment sufficient to trigger it here.

IV

Finally, Munich and NAC argue that we should disregard the state court injunction in this case because state courts have no

26

power to enjoin parties from pursuing federal remedies in federal court, citing cases such as <u>Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1 (1983), <u>General Atomic Co. v. Felter</u>, 434 U.S. 12 (1977), and <u>Donovan v. City of Dallas</u>, 377 U.S. 408 (1964). But none of these cases considered the effect of the McCarran-Ferguson Act or the broad power bestowed on States when acting, as here, pursuant to a law enacted for the purpose of regulating the business of insurance. Authority to relax the "judicially declared rule that state courts are completely without power to restrain federal-court proceedings in *in personam* actions" remains, of course, with Congress. <u>See</u> <u>Donovan</u>, 377 U.S. at 412-13. Congress has evinced a strong federal policy in favor of deferring to state regulation of insolvent insurance companies as reflected in the McCarran-Ferguson Act and the express exclusion of insurance companies from the federal Bankruptcy Code. <u>See</u> <u>Wolfson</u>, 51 F.3d at 147. These laws symbolize the public interest in having the States continue to serve their traditional role as the preeminent regulators of insurance in our federal system and indicates the special status of insurance in the realm of state sovereignty. <u>See</u> <u>Lac D' Amiante</u>, 864 F.2d at 1045 (citing <u>Levy v. Lewis</u>, 635 F.2d 960, 963-64 (2d Cir. 1980)); <u>Hartford Casualty</u>, 913 F.2d at 426. The provisions of OUILA vesting the state court with broad injunctive authority to prevent interference with delinquency

27

proceedings grant no more power than that which Congress has deemed necessary to the parallel disposition of bankruptcies in federal court.

We surely are not saying that a State has the power to enjoin a party generally from pursuing federal remedies in federal court. Nor are we saying that Oklahoma law divested the district court of its diversity jurisdiction. See Martin, 910 F.2d at 254 (rejecting the argument that McCarran-Ferguson Act removes diversity jurisdiction from federal courts in insurance matters). What we are saying is that, by operation of the McCarran-Ferguson Act, a federal act that permits states to exert broad power over the insurance industry, state laws regulating the business of insurance may suspend federal remedies based on conflicting federal statutes--here, the FAA. We therefore hold that the FAA is reverse pre-empted under the McCarran-Ferguson Act, thereby leaving the district court without the power to compel arbitration in this case. Munich and NAC, however, remain free to petition the Oklahoma state court for an order compelling arbitration of their dispute with Crawford.

V

In summary, we hold that Burford abstention was improper because the district court did not have discretion under the FAA to deny Munich and NAC their right to an order compelling arbitration

28

in this case.  We also hold, however, that the provisions of Oklahoma law vesting exclusive original jurisdiction of insurance company delinquency proceedings in Oklahoma receivership court and authorizing the court to enjoin any action interfering with such proceedings are laws enacted for the purpose of regulating the business of insurance and, therefore, fall within the scope of the McCarran-Ferguson Act.  As a result, dismissal of the action was required because, by operation of the McCarran-Ferguson Act, the FAA is reverse pre-empted to the extent it permits Munich and NAC to bring an action against assets of a delinquent insurance company in a forum other than the Oklahoma receivership court.  For these reasons, the judgment of the district court is

A F F I R M E D.