F I L E D
United States Court of Appeals
Tenth Circuit

AUG 28 1998

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DAVISTER CORPORATION,

     Plaintiff-Appellant,

v.

UNITED REPUBLIC LIFE
INSURANCE COMPANY and ROBERT
E. WILCOX, Utah Insurance
Commissioner and Liquidator of United
Republic Life Insurance Company,

     Defendants-Appellees.

No. 96-4063

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 95-CV-1007)

---

Mark R. Gaylord (Charles P. Sampson and Bruce T. Jones with him on the briefs) of
Suitter Axland, Salt Lake City, Utah, for Plaintiff-Appellant.

John P. Harrington (Valerie A. Longmire with him on the brief) of Ray, Quinney &
Nebeker, Salt Lake City, Utah, for Defendants-Appellees.

---

Before **PORFILIO**, **LUCERO**, and **MURPHY**, Circuit Judges.

---

**PORFILIO**, Circuit Judge.

---

This case considers whether the district court erred by abstaining from enforcing arbitration of a dispute between Davister Corporation and the Liquidator of United Republic Life Insurance Company (United), an insurance company domiciled in Utah and currently under liquidation in insolvency proceedings in Utah state court. We believe this question must be resolved under the McCarran-Ferguson Act, not under other doctrines of abstention. So focused, we hold the district court correctly refused to compel arbitration. We therefore affirm its judgment.

The facts of this matter are relatively simple. Prior to insolvency, United had entered into a transaction with Davister in which it agreed to transfer some of its stock to Davister in exchange for 100% of the stock of R. G. Acquisition Corporation (RGA). As part of that agreement, United was to obtain certain real property interests in Waco, Texas, that were the principal assets of RGA. Subsequently, the Commissioner of the Utah Insurance Department notified United this and other similar transactions were improper and must cease. Moreover, the Commissioner advised United the transaction involving the stock of RGA "must be reversed" because United had not obtained required authorization from the commission to exchange its stock for the stock of RGA.

Before the reversal was accomplished, however, the Commissioner filed an action in Utah state court to seize control of the company. He also filed an action in Texas state court to gain control of the Waco real property interests. Davister intervened in the Texas action seeking rescission of its transaction with United, claiming the Utah

- 2 -

Commissioner's order to reverse caused a failure of consideration in its agreement with United. Davister also sought a judgment establishing its right to the Texas property interests.

Meanwhile, in the Utah state court action, the Commissioner obtained an order liquidating United and appointing him the Liquidator. Contemporaneously, the state court issued an order staying all claims against United. *See* Utah Code Ann. § 31A-27-317 ("The filing of a petition for liquidation of a domestic insurer or of an alien insurer domiciled in this state stays all actions and all proceedings against the insurer ...."). That stay was honored by the Texas court which also stayed all of Davister's claims pending in that forum, although the court permitted the continuation of the balance of the Texas action.

Davister then filed this case against United and the Commissioner (Defendants) in the United States District Court for the District of Utah to compel arbitration of the dispute over the Texas real property interests in accordance with the agreements between Davister and United. In addition, Davister sought a stay of the entire Texas action and the Utah liquidation. After a hearing on the merits, the federal district court abstained from compelling arbitration and refused to grant the stay requested by Davister. Davister then brought this appeal.

On appeal, Davister argues clear national policy and the Federal Arbitration Act mandate arbitration in place of state litigation when the parties have contracted to submit

disputes to arbitration, citing *Southland Corp. v. Keating*, 465 U.S. 1 (1984), and *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1 (1983). Davister contends once a federal court determines a dispute exists between the parties which they have agreed to arbitrate, it must stay all other proceedings and compel arbitration. *Houlihan v. Offerman & Co.*, 31 F.3d 692, 695 (8th Cir. 1994). Defendants respond that abstention was proper on grounds of comity, but if not on that basis, certainly under the McCarran-Ferguson Act. Defendants rely upon 15 U.S.C. § 1012 which states: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance," contending it trumps the federal policy favoring arbitration. Defendants also urge their position is supported by *United States v. Fabe,* 508 U.S. 491 (1993).

In *Fabe*, the Court was called upon to determine whether in an Ohio statutory procedure for the liquidation of an insolvent insurance company the United States was entitled to assert a priority claim granted it under a federal statute. "In order to resolve this case, we must decide whether a state statute establishing the priority of creditors' claims in a proceeding to liquidate an insolvent insurance company is a law enacted 'for the purpose of regulating the business of insurance,' within the meaning of § 2(b) of the McCarran-Ferguson Act, 15 U.S.C. § 1012(b)." *Fabe*, 508 U.S. at 493.[1]

---

[1]The Court's analysis produced what we have come to call a three-part test for the determination of whether the McCarran-Ferguson Act should be applied: (1) does the federal statute at issue "specifically relate to the business of insurance"; (2) was the state

(continued...)

The United States maintained the Ohio liquidation act could not have been enacted for the purpose of regulating the business of insurance because it merely determined the order in which claims of creditors would be paid. It also contended the statute did not deal with the insurer-insured relationship because it pertained only to resolution of conflicts between policyholders and other creditors of the insolvent insurance company.

The government grounded its argument on two cases, ***Union Labor Life Ins. Co. v. Pireno***, 458 U.S. 119 (1982), and ***S.E.C. v. National Sec., Inc.,*** 393 U.S. 453 (1969). ***Pireno*** held there are three factors to be considered in determining what constitutes the business of insurance: 1) does the practice have the effect of transferring or spreading a policyholder's risk; 2) is the practice integral to the relationship of the insurer and the insured; 3) is the practice limited to entities within the insurance industry? ***Pireno***, 458 U.S. at 129. ***National Sec.*** held: "Statutes aimed at protecting or regulating [the] relationship [between insured and insurer], directly or indirectly are laws regulating the 'business of insurance.'" ***National Sec.***, 393 U.S. at 460.

The Court was unconvinced. Considering ***Pireno*** together with ***Group Life & Health Ins. Co. v. Royal Drug Co.***, 440 U.S. 205 (1979), both of which held McCarran-Ferguson inapplicable to "ancillary activities" within the insurance industry, *see **Fabe,***

---

[1](...continued)
statute enacted "for the purpose of regulating the business of insurance"; (3) would application of the federal statute "impair, interfere, or supercede" the state statute? ***Fabe,*** 508 U.S. at 500-01. Part (1) of the test is not an issue in this case because the Federal Arbitration Act does not specifically relate to the business of insurance.

508 U.S. at 503, the Court concluded the business of insurance was most importantly involved with the "performance of an insurance contract." *Id.* at 503-05. The Court then explained:

> The broad category of laws enacted "for the purpose of regulating the business of insurance" consists of laws that possess the "end, intention, or aim" of adjusting, managing, or controlling the business of insurance. This category necessarily encompasses more than just the "business of insurance." ... [W]e believe that the actual performance of an insurance contract is an essential part of the "business of insurance." Because the Ohio statute is "aimed at protecting or regulating" the performance of an insurance contract, it follows that it is a law "enacted for the purpose of regulating the business of insurance" within the meaning of the first clause of § 2(b) [15 U.S.C. § 1012(b)].

*Id*. at 505 (citations omitted).

Although the government maintained the Ohio liquidation statute was a bankruptcy law and not an insurance statute, the Court disagreed. "The primary purpose of a statute that distributes the insolvent insurer's assets to policyholders in preference to other creditors is identical to the primary purpose of the insurance company itself: the payment of claims made against policies." *Id.* at 505-06.[2]

Because *Fabe* dealt only with competing claims for priority of distribution in a liquidation setting, it does not completely inform our decision. We are called upon to go

---

[2]Contrary to the position advanced in the dissent, we do not view *Fabe* to permit *all* actions arising under a state insurance liquidation statute to "automatically fall under the purview of the McCarran-Ferguson Act." As we have noted, a carefully constructed three-part test must be satisfied before the Act can apply. This examination must be implemented on a case-by-case basis, and the result will be dictated by the precise statutes involved in each case.

beyond that point to decide whether rights created under the Federal Arbitration Act must give way to a state court blanket stay in the liquidation setting. Our quest leads us to *Munich American Reinsurance Co. v. Crawford*, 141 F.2d 585 (5th Cir. 1998).

In that case, the Fifth Circuit was called upon to decide "whether state laws governing insurance company delinquency proceedings reverse pre-empt the [Federal Arbitration Act] under the McCarran-Ferguson Act." *Munich*, 141 F.3d at 587. The court held they did.

At issue in *Munich* was whether claims asserted by two reinsurers to certain policy proceeds arising out of reinsurance agreements between an insolvent Oklahoma insurance company and the claimants must be resolved by arbitration. The Oklahoma Insurance Commissioner, who was the liquidator of the insolvent company and holder of the proceeds, refused to submit to arbitration.

The claimants filed an action in federal district court to compel arbitration under the Federal Arbitration Act, and the district court granted relief. The Fifth Circuit reversed the judgment, stating:

> [T]he specific provisions of the statute at issue here–vesting exclusive original jurisdiction of delinquency proceedings in the Oklahoma state court *and authorizing the court to enjoin any action interfering with the delinquency proceedings*–are laws enacted clearly for the purpose of regulating the business of insurance. These provisions give the state court the power to decide all issues relating to disposition of an insolvent insurance company's assets, including whether any given property is part of the insolvent estate in the first place.

*Id.* at 592-93 (emphasis added); *see also **Murff v. Professional Med. Ins. Co.***, 97 F.3d 289, 291 (8th Cir.1996) ("We conclude that the Missouri statute purporting to stay all actions against an insolvent insurer is 'a law regulating the business of insurance.' It protects policyholders because it preserves the assets of the insolvent insurer's estate, thereby enhancing the ability of an insolvent insurance company to perform its contractual obligations.").

The court continued, quoting from ***Grimes v. Crown Life Ins. Co.***, 857 F.2d 699, 705 (10th Cir. 1988), "Oklahoma has not only adopted a comprehensive scheme to oversee liquidation of insolvent insurers, it has provided a particular court ... to oversee liquidation proceedings." ***Munich***, 141 F.3d at 593. This, the Fifth Circuit noted, is "a special relationship [which] contributes markedly to the orderly liquidation or rehabilitation of the insurance company and the adjudication of claims against it." *Id.* Moreover, giving the state court ultimate control over all issues relating to the insolvent insurance company is "aimed at protecting the relationship between the insurance company and its policyholders." *Id.*

Dispatching the reinsurers' argument that the state law which consolidated disposition of all claims, including those of creditors other than policyholders, was not a law enacted for the purpose of regulating the business of insurance, the court turned to ***Fabe***. The Fifth Circuit reminded that ***Fabe*** decided the Ohio law dealing with insolvency preferences for administrative expenses was "reasonably necessary" to the

goal of protecting policyholders, hence, that law was enacted for the purpose of regulating the business of insurance. ***Munich***, 141 F.3d at 593 (quoting ***Fabe***, 508 U.S. at 509). The court applied the same reasoning to the Oklahoma liquidation proceedings in state court, holding that although some of the benefits from the liquidation could devolve upon non-policy holding creditors, none of those which inure to the benefit of policyholders "are insignificant or attenuated," and are "indistinguishable from the Ohio provision giving a preference to administrative expenses in Fabe." Thus, the court concluded, "these provisions were enacted for the purpose of regulating the business of insurance." ***Id.*** at 594.[3]

We hold the same result applies here. The Utah statute consolidating all claims against a liquidating insurer, by its nature and express terms, was enacted to protect policyholders. *See* Utah Code Ann. § 31A-27-101(2). By offering benefits to other creditors, that ultimate purpose is neither diminished nor denigrated. Adding to the stated

---

[3]The dissent overreads ***Munich.*** The court did not in any way adopt a "per se rule of reverse preemption of federal enforcement of all arbitration agreements against an insurance company in insolvency proceedings." To the contrary, the Fifth Circuit carefully conducted the three-part ***Fabe*** test and concluded the Oklahoma law vesting exclusive jurisdiction in the state court and providing for a blanket stay of all other proceedings was "clearly for the purpose of regulating the business of insurance." ***Munich***, 141 F.3d at 592-93. Nothing contained within the court's reasoning or inferable therefrom suggests the adoption of a per se test. More importantly, we purpose no such result ourselves.

statutory purpose is the statutory blanket stay against all proceedings against the insolvent insurance company.[4]

The stay makes clear it is the policy of the State of Utah to consolidate in one forum all matters attendant to the liquidation of a domiciled insurance company. That policy guarantees that the entire process is more than a simple liquidation of debt. Indeed, all decisions in Utah affecting the ultimate benefits to be accorded policyholders of a liquidated insurance company are circumscribed in one proceeding. Because the stay prevents conflicting rulings on claims, the unequal treatment of claimants, and the unnecessary and wasteful dissipation of the remaining funds of the insolvent insurer, the stay manifests a purpose of protecting policyholders. *Munich*, 141 F.3d at 593. We think it evident the Utah statute meets the test of having been enacted for the purpose of regulating the business of insurance.[5]

---

[4]"The filing of a petition for liquidation of a domestic insurer or of an alien insurer domiciled in this state **stays all actions and all proceedings** against the insurer in Utah or elsewhere ...." Utah Code. Ann. § 31A-27-317(a) (emphasis added).

[5]The dissent takes the position that the "facts before us are not related to the business of insurance as defined in *Fabe*," citing in support *Garcia v. Island Program Designer, Inc.*, 4 F.3d 57, 62 (1st Cir. 1993). *Garcia*, in fact makes the point we adopt. The federal statute in *Garcia* gave the United States a priority *in the state liquidation proceeding*. The law under which the liquidation was conducted would have deprived the federal government from participating in the proceeds of liquidation until after all other claims had been satisfied. *Id.* at 61. Clearly, the Commonwealth statute prescribing the order in which claims were to be liquidated had nothing to do with the regulation of the business of insurance. Indeed, that statute would have applicability in any form of debt liquidation proceeding and it is not in any way peculiar to the business of insurance. In contrast, application of the federal statute here (having nothing to do with regulating the

(continued...)

- 10 -

That decision leaves us with only the third part of the *Fabe* test, that is, whether, under the McCarran-Ferguson Act, the Federal Arbitration Act "invalidate[s], impair[s], or supercede[s]" § 31A-27-317(a). Again, we believe the answer is obvious. Allowing a putative creditor to pluck from the entire liquidation proceeding one discrete issue and force arbitration contrary to the blanket stay entered by the Utah state court would certainly impair the progress of the orderly resolution of all matters involving the insolvent company. Unquestionably, that result would directly impact the policyholders because it deals with a purported asset of the insurance company that could be apportioned to them. Recognition of that consequence makes apparent the conflict between the terms of the FAA and the Utah law. Neither *Fabe* nor any other authority holds that the applicability of the McCarran-Ferguson Act is dependant upon the existence of a Utah law "mandating against arbitration" as the dissent contends. With all due respect, that approach turns the *Fabe* test inside out. The issue is not whether Utah prohibits arbitration, but whether enforcing arbitration invalidates, impairs, or supercedes the enforcement of the state process designed to protect the interests of policyholders. We agree wholeheartedly with the Fifth Circuit that "[r]egardless of the nature of the

---

[5](...continued)
insurance business) would remove a dispute over a potentially significant piece of the liquidation proceeding (having by definition everything to do with regulating the insurance business) from the state court whose jurisdiction is exclusive and submit it for resolution by a non-judicial forum. That process would thoroughly denigrate Utah Code Ann. § 31A-27-101(2), the state law enacted for the protection of policyholders. *Garcia* is simply inapposite.

- 11 -

reinsurers' action, ordering it resolved in a forum other than the receivership court nevertheless conflicts with [state] law giving the state court the power to enjoin any action interfering with the delinquency proceedings." *Munich*, 141 F.3d at 595.

Indeed, as the district court in this case cogently observed:

I am just curious if we have ... a state judge overseeing the liquidation, and you have ... a stay order entered by him, and you're seeking some kind of relief in reference to either assets or claims of another kind against the company that is in receivership, ordinarily wouldn't you be over there in front of that state court judge saying, look, here is a problem, tell this receiver that you're overseeing to do something?

The district court, of course, was right.

Our resolution does not leave Davister without a remedy. Indeed, it can bring this matter before the liquidation court, and if arbitration is the best way to resolve the conflict, it can be ordered by that court under its own aegis. Moreover, if the stay is unfairly limiting Davister's pursuit of its rights in Texas, the Utah court can certainly grant relief from that stay as well. A federal court need not interfere in the process.

**AFFIRMED.**

96-4063, Davister v. United Republic Life Insurance Co.

**LUCERO**, Circuit Judge, dissenting.

Because I believe that the issue presented before us is governed by United States v. Fabe, 508 U.S. 491 (1993), and because my reading of that carefully limited opinion delivered by a divided Supreme Court precludes both the approach and result reached by the majority opinion, I respectfully dissent.

Unlike the majority, I do not understand Fabe to permit a conclusion that all actions arising under a state insurance liquidation statute automatically fall under the purview of the McCarran-Ferguson Act merely because of the operation of the state statute. Fabe's holding is much more nuanced – requiring a close inquiry into whether the operation of each provision of the statute implicates the "business of insurance."

In Fabe, after reviewing relevant precedent, the Court concluded that a state statute "regulate[s] the business of insurance only to the extent that it protect[s] policyholders." Id. at 509 n.8. I recognize that the interests of policyholders are indirectly implicated by any claims on the assets of insolvent insurers by potential creditors. Emphasizing the "narrowness of our actual holding," id., however, the Fabe Court cautioned against defining all such indirect connections as pertaining to the "business of insurance" under McCarran-Ferguson. "This argument, however, goes too far: 'But in that sense, every business decision made by an insurance company has some impact on its reliability ... and its status as a reliable

insurer.' Royal Drug rejected the notion that such indirect effects are sufficient for a state law to avoid pre-emption under the McCarran-Ferguson Act." Id. at 508-09 (quoting Group Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205, 216-17 (1979)).

The facts before us are not related to the business of insurance as defined in Fabe. I disagree with the majority's adoption of Munich Amer. Reins. Co. v. Crawford, 141 F.3d 585 (5th Cir. 1998) to the extent that Munich imposes a per se rule of reverse preemption of federal enforcement of all arbitration agreements against an insurance company in insolvency proceedings. Fabe requires the examination of individual provisions of an insurance liquidation statute to determine which of those provisions specifically protect policyholders. See Fabe, 508 U.S. at 508-10 (finding reverse preemption of federal priority statute with respect to policyholders, but not with respect to other creditors); see also Garcia v. Island Program Designer, Inc., 4 F.3d 57, 62 (1st Cir. 1993) (Breyer, C.J.) (finding no reverse-preemption of filing-deadline provision of Puerto Rico insurance insolvency statute[1] because provision "cannot be said to directly 'regulate[] policyholders,' for it is neither directed at, nor necessary for, the protection of policyholders, as the [Fabe] Court required. The provision helps policyholders only to the extent that (and in the same way as) it helps all

---

[1] See L.P.R.A. tit. 26 (Insurance), ch. 40 (Rehabilitation and Liquidation).

- 2 -

creditors."). Like the provision at issue in <u>Garcia,</u> a blanket stay of all arbitration proceedings is of general benefit to all creditors and not specifically for the benefit of policyholders.

Nor is <u>Munich</u> clearly apposite on its facts to the situation before us. The <u>Munich</u> court considered the enforceability of arbitration clauses in reinsurance contracts which covered losses on claims paid under an insurance policy by the insolvent insurer, contracts which arguably relate with some directness to protecting policyholders. The precise question before the district court below, however, was whether to compel specific performance of the arbitration clause in a stock purchase agreement forming part of a real estate deal. Davister is neither a policyholder of United Republic nor an insurer of United Republic's policies. The contract to be interpreted is a real estate contract. Though an insurance company, albeit now insolvent, is a party, the contract has no connection to policyholders or their policies. The deliberately narrow holding of <u>Fabe</u> forecloses a scope of reverse preemption so broad that it could encompass the arbitration of such a contract.

Furthermore, this is not a case where the enforcement of the federal right would conflict with a specific provision of a state law precluding arbitration in insurance cases or insurance liquidation proceedings. <u>Cf.</u> <u>Stephens v. American Int'l Ins. Co.</u>, 66 F.3d 41, 44 (2d Cir. 1995) (concluding that specific anti-

arbitration provision in Kentucky insurance liquidation law precludes compelling arbitration under federal law); Mutual Reins. Bureau v. Great Plains Mut. Ins. Co., 969 F.2d 931, 933-34 (10th Cir. 1992) (holding that Kansas arbitration statute specifically exempting "contracts of insurance" was protected from FAA preemption by McCarran-Ferguson Act). Utah has no state law, either within or outside of its insurance liquidation scheme, mandating against arbitration in the insurance context. Thus, it is by no means clear that enforcement of the FAA would "invalidate, impair, or supersede" the Utah liquidation statute.

I am mindful that "the statutory question the majority considers with care is difficult." Fabe, 508 U.S. at 510 (Kennedy, J., dissenting). To bring this dispute within the reach of McCarran-Ferguson reverse pre-emption would swallow the very fine distinction set forth by Fabe's majority, potentially precluding federal jurisdiction over any dispute involving an insolvent insurance company. Because I believe that the majority's result is neither contemplated by nor consistent with Fabe, nor required by McCarran-Ferguson, I would conclude that the federal court has jurisdiction over this dispute and would reach the question of whether the district court below properly abstained from exercising that jurisdiction.