66 F.3d 41
 64 USLW 2165
 Don W. STEPHENS, Commissioner of Insurance, Commonwealth of
Kentucky as Liquidator of Delta America Re
Insurance Company, Plaintiff-Appellant,
v.
AMERICAN INTERNATIONAL INS. CO.; Granite State Insurance
Co.; Lexington Insurance Company; New Hampshire Insurance
Company; American Modern Home Ins. Co.; Canal Ins. Co.;
North River Insurance Company, Defendants,
Home Insurance Company; U.S. International Reinsurance
Company, Defendants-Appellees,
Imperial Casualty & Indemnity; Le Reunion Aerienne
Groupment D'Interet Economique; Mead Reinsurance Corp.;
Mony Reinsurance Corporation; Scottsdale Ins. Co.;
Employers Insurance Company of Wausau; Nationwide Mutual
Insurance Company; Northwestern National Ins. Co.;
Universal Reinsurance Corp.; Mt. Hawley Ins. Co., Defendants,
Royal Insurance Company of America; Royal Indemnity
Company; St. Paul Surplus Lines Ins. Co.,
Defendants-Appellees,
St. Paul Fire & Marine Insurance Co.; Transamerica
Insurance Company, Defendants,
Constitution State Insurance Company, Defendant-Appellee,
Great Southwest Fire Ins. Co.; Lloyd's Syndicates E.P.
Cowen, D.H. Forest, D.J. Walker, F.R. White, and
K.F. Adler, Defendants,
I.A.G.M.; British Aviation Ins. Co., Ltd., Defendants-Appellees,
Association of Commercial Property Insurers; English &
American Insurance Group, PLC, Defendants,
Reinsurance Corporation of New York, Defendant-Appellee.
 No. 1516, Docket 94-9143.
 United States Court of Appeals,
Second Circuit.
 Argued May 11, 1995.
Decided Sept. 14, 1995.
 
 William F. Costigan, New York City (Andrew J. Costigan, Costigan & Berns, P.C., New York City, Jacqueline Syers Duncan, Kevin M. McGuire, Jackson & Kelly, Lexington, KY, of counsel), for plaintiff-appellant.
 James D. Veach, New York City (Guy P. Dauerty, Mound, Cotton & Wollan, of counsel), for defendants-appellees St. Paul Surplus Lines Ins. Co., Reins. Corp. of New York, Constitution State Ins. Co., Home Ins. Co., U.S. Intern. Reins. Co., Royal Ins. Co. of America, and Royal Indem. Co.
 David J. Grais, New York City, Grais & Phillips, for defendant-appellee British Aviation Ins. Co., Ltd.
 Debra J. Hall, George M. Brady III, Anthony J. Mormino, Washington, DC, submitted a brief for amicus curiae The Reinsurance Association of America.
 Stephen W. Schwab, Rudnick & Wolfe, Chicago, IL, Ellen G. Robinson, Robinson, Curley & Clayton, Chicago, IL, submitted a brief for amicus curiae James W. Schacht, Acting Director of Insurance of the State of Illinois, Liquidator of numerous insolvent insurers.
 Before: NEWMAN, McLAUGHLIN and PARKER, Circuit Judges.
 PARKER, Circuit Judge:
 The issue presented on this appeal is whether an anti-arbitration provision in the Kentucky Insurers Rehabilitation and Liquidation Law is enacted "for the purpose of regulating the business of insurance" and thus preserved by the McCarran-Ferguson Act from preemption by the Federal Arbitration Act. For the following reasons, we hold that the anti-arbitration provision of the Kentucky Insurers Rehabilitation and Liquidation Law is preserved by the McCarran-Ferguson Act and the Liquidator cannot be compelled to arbitrate. The order of the Southern District of New York (Martin, J.) compelling arbitration in this case is reversed.
 
 FACTS
 
 1
 Delta America Re Insurance Company ("Delta") was an insurance company chartered under the laws of Kentucky, involved in the business of reinsurance. Reinsurance is the practice whereby primary insurers who have assumed risk from their policy holders in exchange for premiums, cede portions of that risk to reinsurers, in exchange for premiums, pursuant to reinsurance agreements. In turn, the reinsurers, often, cede portions of the assumed risk to their own reinsurers. In this way, the risk associated with any one policyholder is spread among a variety of insurers.
 
 
 2
 In 1985, the Franklin Circuit Court of Kentucky found Delta to be insolvent. An Order of Liquidation was entered on September 15, 1985 and pursuant to the Kentucky Insurers Rehabilitation and Liquidation Law, Ky. Rev. Stat. Ann. 304.33-010 et seq. (Baldwin 1994) ("the Kentucky Liquidation Act"), the Commissioner of Insurance was appointed Liquidator, entrusted with overseeing the liquidation of the company. In September 1991, the Liquidator filed suit in the Southern District of New York, pursuant to 28 U.S.C. Sec. 1332 (1988), against various companies who had ceded risk to Delta ("the Cedents"), seeking both recovery of premiums owed to Delta and an order requiring specific performance of Cedents' remaining obligations to pay all future premiums. The Cedents have refused to pay the premiums because they claim that they are entitled, given industry practice and their prior dealings with Delta, to set off the premiums the Liquidator claims they owe, against the value of losses owed to them by Delta. However, the Liquidator claims that setoffs are prohibited under the Kentucky Liquidation Act, Sec. 304.33-330, which prohibits the offset of premiums owing to an insolvent insurer:
 
 
 3
 No setoff or counterclaim shall be allowed in favor of any person where:
 
 
 4
 ... (d) The obligation of the person is to pay premiums, whether earned or unearned, to the insurer.
 
 
 5
 Ky. Rev. Stat. Ann. Sec. 304.33-330(2)(d) (Baldwin 1994).
 
 
 6
 All of the reinsurance contracts at issue contain broad arbitration clauses. Certain Cedents moved to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. Sec. 1 et seq. (1994). All but one of these Cedents sought to compel arbitration under the provisions of Chapter 1 of the FAA, under which arbitration may be ordered only in the district where the petition requesting the order was filed. 9 U.S.C. Sec. 4 (1994). However, British Aviation Insurance Company, Ltd. ("British Aviation"), moved to compel arbitration abroad, pursuant to Chapter 2 of the FAA, 9 U.S.C. Sec. 201 et seq., which implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention").[1]
 
 
 7
 The Liquidator opposed the motions to compel arbitration arguing that Sec. 304.33-010(6) of the Kentucky Liquidation Act, is a statutory prohibition against compelling a liquidator to arbitrate. This section states:
 
 
 8
 [i]f there is a delinquency proceeding under this subtitle, the provisions of this subtitle shall govern those proceedings, and all conflicting contractual provisions contained in any contract between the insurer which is subject to the delinquency proceeding and any third party, including, but not limited to, the choice of law or arbitration provisions, shall be deemed subordinated to the provisions of this subtitle.
 
 
 9
 Ky. Rev. Stat. Ann. Sec. 304.33-010(6) (Baldwin 1994). The Liquidator argued that this section nullified the arbitration clauses in this case. The Cedents, however, asserted that the FAA preempts this section of the Kentucky Liquidation Act. The Liquidator maintained that the FAA does not apply because the McCarran-Ferguson Act ("McCarran-Ferguson"), 15 U.S.C. Sec. 1011 et seq. (1994), preserved the Kentucky Liquidation Act from preemption because the Act was enacted "for the purpose of regulating the business of insurance" and the FAA does not relate to the business of insurance.
 
 
 10
 The District Court held that the anti-arbitration provision of the Kentucky Liquidation Act was not "designed to protect policyholders and thus [was not] exempt from preemption by the FAA," and granted the Cedents' motions to compel arbitration. Stephens v. American Int'l Ins. Co., et al., No. 91-CIV-6245, slip op. at 3 (S.D.N.Y. Aug. 12, 1994). This Court granted the Liquidator's motion for permission to appeal Judge Martin's interlocutory order compelling arbitration, and this appeal followed. This Court has jurisdiction pursuant to 28 U.S.C. Sec. 1292(b) (1988).
 
 DISCUSSION
 I.
 
 11
 Generally, arbitration clauses are enforceable under the Federal Arbitration Act. 9 U.S.C. Sec. 3 (1994). Under the conventional application of the supremacy clause and rules of statutory construction, the FAA, a federal statute, would preempt Kentucky's Liquidation Act, a state statute, insofar as the Liquidation Act contravenes the FAA. However, Congress created an exception to the usual rules of preemption when it enacted the McCarran-Ferguson Act. McCarran-Ferguson preserves state statutes, enacted "for the purpose of regulating the business of insurance," from preemption and leaves the regulation of the business of insurance to the states. Under McCarran-Ferguson,
 
 
 12
 [n]o Act of Congress shall be construed to invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance.
 
 
 13
 15 U.S.C. Sec. 1012(b) (1994).
 
 
 14
 The Liquidator argues that the Kentucky Liquidation Act is a "law enacted for the purpose of regulating the business of insurance" and that Congress cannot supersede it except with an Act specifically relating to insurance. No one disputes the fact that the FAA does not specifically relate to insurance. The Cedents argue that the District Court was correct in holding that the anti-arbitration provision in the Liquidation Act does not "protect policyholders" and thus does not "regulate the business of insurance" in the manner in which that phrase has been defined by the courts. See United States Dept. of Treasury v. Fabe, --- U.S. ----, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993); Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982); Group Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979); Garcia v. Island Program Designer, Inc., 4 F.3d 57 (1st Cir.1993).
 
 
 15
 The Supreme Court has identified a three part test for determining whether a particular practice is a part of the "business of insurance:" "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." Pireno, 458 U.S. at 129, 102 S.Ct. at 3008 (citing Royal Drug, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979)).[2] Reinsurance practices fall within this test. Any transaction between an insurer and a reinsurer is principally the same as a transaction between an original policyholder and an insurer, as both center around the transfer of risk. Furthermore, reinsurance is not merely "an integral part of the policy relationship between the insurer and insured," it is the policy relationship between the two parties. Finally, the practice of reinsuring insurers is a practice "limited to entities within the insurance industry."
 
 
 16
 Since reinsurance is a practice which falls within the "business of insurance" the only question that remains is whether the Kentucky Liquidation Act was "enacted for the purpose of regulation of insurance" under McCarran-Ferguson. In Fabe, the Supreme Court held that in order for a state law to have been "enacted for the purpose of regulation of the business of insurance" under McCarran-Ferguson, it must be "aimed at protecting or regulating [the] relationship [between the insurer and insured], directly or indirectly." Fabe, --- U.S. at ----, 113 S.Ct. at 2208 (quoting SEC v. National Securities, Inc., 393 U.S. 453, 460, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969)). The Court focused on the relationship between an insurance company and its policyholders, stating,
 
 
 17
 "[t]he relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement--these [are] the core of the 'business of insurance.' Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they too must be placed in the same class. But whatever the exact scope of the statutory term, it is clear where the focus was--it was on the relationship between the insurance company and the policyholder."
 
 
 18
 Id. (quoting National Securities, 393 U.S. at 460, 89 S.Ct. at 568).
 
 
 19
 In this case we have a state statute which specifically regulates the liquidation of insurance companies and which renders arbitration clauses unenforceable during liquidation. It is clear that through its anti-arbitration provision, among others, the Kentucky Liquidation Act regulates the performance of insurance contracts once an insurance company (or a reinsurance company) is declared insolvent and enters liquidation. It is crucial to the "relationship between [an] insurance company and [a] policyholder" that both parties know that in the case of insolvency, the insurance company will be liquidated in an organized fashion.
 
 
 20
 The Cedents argue that even if the Kentucky Liquidation Act is found to regulate the business of insurance, the anti-arbitration provision contained in the Act does not "protect" the policyholders. The Cedents maintain that, to the contrary, it deprives them of a bargained-for right to arbitration and thus is not preserved from preemption by McCarran-Ferguson. This argument relies on an overly narrow definition of "protecting" policyholders. Fabe states that "[s]tatutes aimed at protecting or regulating [the relationship between policyholder and insurer], directly or indirectly, are laws regulating the 'business of insurance,' " and that any law with the "end, intention, or aim of adjusting, managing, or controlling the business of insurance" is a law "enacted for the purpose of regulating the business of insurance." Fabe, --- U.S. at ----, ----, 113 S.Ct. at 2208, 2210 (citations and quotations omitted) (emphasis added).
 
 
 21
 The concepts of "regulation" and "protection" are inextricably entwined and are often referred to interchangeably. In Garcia, the First Circuit used one term to define the other, holding that the provision in question could not be said to " 'regulate policyholders', for it [was] neither directed at, nor necessary for, the protection of the policyholders." Garcia, 4 F.3d at 62. The Kentucky Liquidation Act has the "end, intention, or aim of adjusting, managing or controlling the business of insurance," in that it regulates the winding up of an insolvent insurance company. The Liquidation Act "protects" policyholders--whether they are individual policyholders or ceding insurance companies--by assuring that an insolvent insurer will be liquidated in an orderly and predictable manner and the anti-arbitration provision is simply one piece of that mechanism.
 
 II.
 
 22
 Because the District Court found that the anti-arbitration provision of the Liquidation Act was not enacted for the purpose of protecting policyholders and thus not preserved by McCarran-Ferguson, it did not address the foreign reinsurers' more specific arguments regarding international agreements and the Convention. Both British Aviation and RECO argue that, as foreign corporations, even if the Kentucky Liquidation Act is not preempted by the FAA as to the domestic Cedents, the Convention would still require arbitration of their claims. The argument is that under the Supremacy Clause the Convention supersedes the Kentucky Liquidation Act. This argument fails because the Convention is not self-executing, and therefore, relies upon an Act of Congress for its implementation. See 9 U.S.C. Secs. 201-208 (1994).
 
 
 23
 A treaty is, in its nature, a contract between two nations, not a legislative act. It does not generally effect, of itself, the object to be accomplished; especially, so far as its operation is infra-territorial; but is carried into execution by the sovereign power of the respective parties to the instrument. In the United States, a different principle is established. Our constitution declares a treaty to be the law of the land. It is, consequently, to be regarded in courts of justice as equivalent to an act of the legislature, whenever it operates of itself, without the aid of any legislative provision. But when the terms of the stipulation import a contract--when either of the parties engage to perform a particular act, the treaty addresses itself to the political, not the judicial department; and the legislature must execute the contract, before it can become a rule for the court.
 
 
 24
 Foster v. Neilson, 27 U.S. (2 Pet.) 253, 313-14, 7 L.Ed. 415 (1829) (emphasis added). McCarran-Ferguson states "[n]o Act of Congress shall be construed to ... supersede any law ... regulating the business of insurance." 15 U.S.C. Sec. 1012(b) (1994). Accordingly, the implementing legislation does not preempt the Kentucky Liquidation Act--which, as we have already held, is a law "regulating the business of insurance." The Convention itself is simply inapplicable in this instance.
 
 CONCLUSION
 
 25
 Because the Kentucky Liquidation Act is a state statute enacted "for the purpose of regulating the business of insurance" and is "designed to protect policyholders" under the McCarran-Ferguson Act, it is not preempted by the Federal Arbitration Act. We have considered the Cedents' other arguments and have found them to be without merit. Thus, under Sec. 304.33-010(6) of the Liquidation Act, the Liquidator cannot be compelled to arbitrate and the District Court's order compelling the Liquidator to arbitrate is hereby reversed.
 
 
 
 [1]
 Another Cedent, Reinsurance Corporation of New York, (UK) Ltd. ("RECO") is also an alien and thus subject to the Convention, but is seeking arbitration in New York and thus has moved pursuant to Chapter 1
 
 
 [2]
 Although Pireno and Royal Drug both concern an interpretation of the "business of insurance" language as used in the second clause of Sec. 2(b) of McCarran-Ferguson, the Court, in Fabe, used the test in the context of deciding whether an Ohio priority statute was preserved from preemption by the first clause of McCarran-Ferguson, which is similar to the issue before this Court. Fabe, --- U.S. at ----, 113 S.Ct. at 2209